**RECORD NO.: 23-2135**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

KENNETH FITCH, PHYLIS REINARD, DEBORAH HEIM
MARY FRYE, ALAN RIVKIN, HOWARD KILIAN,
And all individuals similarly situated

*Plaintiff - Appellants,*

v.

STATE OF MARYLAND, GOVERNOR LARRY HOGAN,
SECRETARY DAVID BRINKLEY,

*Defendant-Appellees.*

On Appeal from the U.S. District Court for the District of Maryland
(Civil Action No.: 18-cv-02817-PJM)

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

Deborah A. Holloway Hill
Law Office of Deborah Hill, LLC
P.O. Box 465
Cockeysville, MD 21030
(410) 428-7278
dahhlaw@outlook.com

*Attorney for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

JURISDICTIONAL STATEMENT ..........................................................1

STANDARD OF REVIEW………………………………………..…….2

STATEMENT OF ISSUES ......................................................................2

STATEMENT OF CASE ..........................................................................3

      A. Procedural History………………………………………….11

SUMMARY OF ARGUMENT ...............................................................17

ARGUMENT ...........................................................................................17

     A.    Maryland Law Determines the Contract……………………….18

     B.    The Statute's Plain Language …………………………………..19

     C.    The Statutory Scheme …………………………..………………22

     D.    The Prepaid Fringe Benefit …………………………….…..23

     E.    A Separate Vesting Criteria …………………………….……………24

     F.    2019 Law is Unconstitutional ………………………………….26

     G.    No Representation ……………………………………………26

CONCLUSION........................................................................................28

STATEMENT REGARDING ORAL ARGUMENT ..............................29

CERTIFICATE OF COMPLIANCE …………………….……………..…………..29

i

CERTIFICATE OF SERVICE………………………………...………………….30

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*AFSCME v. State, 61 F.4th 143 (2023)* .............................................. 2

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)* ..................................... 24

*Andrews v. Anne Arundel County, MD 931 F. Supp 1255 (D. Md. 1996)* ....... 19

*Allstate Insurance Company v. Warns, CCB 11-1846 (2012)* ......................... 25

*Allstate v. Kim, 829 A.2d (2003)* ......................................................... 26

*Baker v. Baltimore County, 487 F. Sup 461(Dist. Md. 1980)* ......................... 18

*City of Frederick v. Quinn, 35 Md. App 626 (1977)* ..................................... 22

*Dodge v. Board of Education, 302 U.S. 74 (1937)* ....................................... 18

*Fitch v. Maryland, 24-18-005077* ......................................................... 2

*Fogade v. ENB Revocable Trust, 263 F.3d 1274 (11th Cir. 2001)* .................. 27

*Forest Heights v. M-NCPPC, 205 A. 3d 1067 (Md. App. 2019).* .................... 21

*Husain v. Olympic Airways, 316 F. 3d 829 (9th Cir. 2002)* ........................... 27

*In Re Lumber Liquidators Chinese Manufactured Flooring Prods Mktg A*
   *Sales Pracs. & Prods Liab. Litig, 952 F.3d 471 (4th Cir. 2020)* ................... 16

*Kestler v. BD of Trustees of NC Retirement Sys., 48 F.3d 800 (4th Cir. 1995)* 18

*King v. Bankerd, 492 A.2d 608 (1985)* .................................................... 23

*Koste v. Town of Oxford, 63 A.3d 582 (Md. App. 2013)* ................................ 19

*Lockshin v. Semsker, 412 Md 256 (Md. 2010)* ........................................... 21

*Nat'l R.R Passenger Corp v. Atkinson Topeka & Santa Fe Ry. Co., 470 U.S.*
   *451 (1985).* .................................................................................. 17

*State v. Green, 367 Md 61 (2001)* ......................................................... 20

*United States v. Rodgers, 461 U.S. 677 (1983)* .......................................... 21

*United States Trust Company of New York v. New Jersey, 431 U.S. 1 (1977)*..19

*United States v. Eimco Process Equip. Co.*, 61 F.3d 445 (5th Cir. 1995) ....... 27

*Variety Stores, Inc. v. Walmart Stores, Inc.*, 888 F.3d 651 (4th Cir. 2018) ...... 16

*Walzer v. Osborne*, 911 A.2d 427 (2006) ........................................................ 21

**Statutes**

2004 Md. Laws ch. 296 ........................................................................     5
2011 Md. Laws ch. 397 ........................................................................     6
2018 Md. Laws ch. 10 ..........................................................................     7
2019 Md. Laws ch. 767 ........................................................................     8

28 U.S.C. § 401(a) ...............................................................................     5
28 U.S.C. § 1291 ..................................................................................     1
28 U.S.C. § 1331 ..................................................................................     1
28 U.S.C. § 1367 ..................................................................................     1
28 U.S.C. § 1441 ..................................................................................     1
42 U.S.C. §1395w-101, *et. seq.* ........................................................     5

Fed. R. Civ. P. 52(a)(6)………………………………………………... 27
Fed. R. Civ. P. 54(b)……………………………………………………1
Fed. R. Civ. P. 54 (b) …………………………………………………... 2
Fed. R. Civ. P. 56(a) …………………………………………………... 16

Maryland Constitution Article 24 ......................................................    26
Maryland Rule 3-501(c) ......................................................................    23

Md. Code Ann. State Personnel & Pensions § 101, *et seq.* ...............     4
Md. Code Ann. State Personnel & Pensions § 2-502.1 .....................     4
Md. Code Ann. State Personnel & Pensions § 2-508…………………... *Passim*
Md. Code Ann. State Personnel & Pensions § 2-508(b)(1)...........................     7
Md. Code Ann. State Personnel & Pensions § 2-508(c)(1) …………… *Passim*
Md Code Ann.  State Personnel & Pensions § 2-508(c)(2) …………… *Passim*
Md. Code Ann. State Personnel & Pensions § 2-509.1(2005)…………... *Passim*
Md. Code Ann. State Personnel & Pensions § 2-509.1(d)(2)(i).......................     8
Md. Code Ann. State Personnel & Pensions § 2-509.1(e)...........................     9
Md. Code Ann. State Personnel & Pensions § 2-509.1(e)(1)(i) .....................     9

Md. Code Ann. State Personnel & Pensions § 2-509.1(e)(2) ........................... 9

Md. Code Ann. State Personnel & Pensions § 2-509.1(f)(1) .......................... 9

Md. Code Ann. State Personnel & Pensions § 2-509.1(f)(1)(i) ..................... 9

Md. Code Ann. State Personnel & Pensions § 2-509.1(f) (1)(ii) ................... 9

Md. Code Ann. State Personnel & Pensions § 2-509.1(f)(2)(1)...................... 5

Md. Code Ann. State Personnel & Pensions § 21-304 .................................. 5

Md Code Ann. State Personnel & Pensions § 34-101(b) .............................. 5

Md. Code Ann. State Personnel & Pensions § 34-101(c)............................... 5

Md. Code Ann. State Personnel & Pensions § 34-101(d) .............................. 5


U.S. Constitution Article 1§ 10 ...................................................................... 1

U.S. Constitution Article 1§ 10 ……………………………………………… 26

U.S. Constitution Fourteenth Amendment ...................................................... 1

## Other Authorities

Black's Law Dictionary, 3rd Pkt Ed. 2006……………………………………24

COMAR 17.13.05.(c)(1) .................................................................................  4

# JURISDICTIONAL STATEMENT

The United States District Court for the District of Maryland had jurisdiction of the case below pursuant to 28 U.S.C. § 1331 and 28 USC § 1441.  The District Court's federal question jurisdiction was based on an alleged violations of the Takings Clause of the Fifth Amendment of the United States Constitution made applicable to the actions complained of by the Fourteenth Amendment, Article 1 § 10 of the Constitution and the Equal Protection laws under the Fourteenth Amendment of the United States Constitution.  The United States District Court has supplemental jurisdiction pursuant to 28 U.S. C. § 1367 over State law constitutional claims.

The United States Court of Appeals for the Fourth Circuit has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.  On September 10, 2018, Appellants filed a Complaint for Declaratory Judgment and a Motion for Temporary and Preliminary Injunction.  On September 11, 2018, the case was removed to the United States District Court for the District of Maryland.  On September 29, 2023, the District Court issued a final judgement granting the Appellee's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 54(b). The Notice of Appeal was filed on October 24, 2023.

## STANDARD OF REVIEW

The Court reviews the District Court's grant of summary judgment de novo, Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

Questions of law are reviewed de novo, including questions of statutory interpretation. In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg A Sales Pracs. & Prods Liab. Litig, 952 F.3d 471 (4th Cir. 2020).

## STATEMENT OF ISSUES

Whether summary judgment was properly awarded to the State under AFSCME v. Maryland when the AFSCME Court did not give deference to Maryland law on statutory construction, allowed an unconstitutional law to retroactively divest property interests and extended Fed. R. Civ. P. 54(b) to address the issues of Retirees without hearing their arguments?

Whether a statute can retroactively eliminate the property interests of the State Retirees under the Maryland and United States Constitution when vesting occurred prior to its enactment?

Whether the State of Maryland can create a unilateral binding contract under AFSCME v. Maryland when the State makes a definite promise in exchange for performance?

## STATEMENT OF CASE

Four Medicare-eligible State Retirees ("Fitch Retirees") filed a Complaint in the Circuit Court for Baltimore City (Fitch v. Maryland, 24-18-005077) and sought relief for (1) Declaratory and Injunctive Relief; (2) Breach of Contract; (3) Unconstitutional Taking; (4) Unconstitutional Impairment of Contracts Under Federal Law; (5) Unconstitutional Impairment of Contracts under State Law; and (6) violations of the Equal Protection and Due Process Clause on behalf of themselves, and all those similarly situated, against the State of Maryland, the Maryland Governor and the Secretary of the Department of Budget and Management (collectively "Maryland"). (JA0038 ¶ 43). The Fitch Retirees sought to protect and restore their contractual and constitutional right to access the Maryland State Employee and Retiree Health and Welfare Benefits Program. (JA0029 ¶ 2). The Fitch Retirees continued their employment as State of Maryland employees in exchange for certain deferred compensation from the state, including, but not limited to guaranteed health insurance benefits throughout the duration of their retirement. (JA0034). The Fitch Retirees assert that Maryland made a promise to them that if

they fulfilled the conditions set forth in 2-508, they would enjoy a health benefit that included prescription drug coverage from the State Health and Welfare Benefits Program during their retirement. (JA0085; JA0087; JA0097).

Prior to the statutes and regulations at issue, the Fitch Retirees qualified to participate in the State Plan ("State Subsidy") after 5 years of service and earn a maximum State Subsidy for health benefits after 16 years of service. (JA0744). Moreover, employees with 16 years of service could leave State employment and still claim their benefit when they reach normal retirement age, even if they did not retire directly from the State. (JA0744).

In June of 2018, Medicare – Eligible State Retirees received a letter dated May 15, 2018, from the Maryland Department of Budget & Management ("DBM") stating that their prescription drug coverage was eliminated in 2011 and that beginning October 15 thru December 30th, retires would have to choose a Medicare Part D Plan to fulfill their prescription needs for 2024 and every subsequent year thereafter. (JA0089). The promise and provision of certain guaranteed health benefits, which includes prescription drug coverage, for the duration of their retirement, induced State Retirees to continue working as a State of Maryland employees and forgo additional options and opportunities for employment and benefits from other employers. (JA0085; JA0087; JA0097). State retirees relied on

the continuance of the health benefit that included prescription drug coverage when contemplating the financial stability of their retirement. (JA0085; JA0087; JA0097).

The Maryland General Assembly ("Legislature") codified retirement benefits afforded to State Retirees. Md. Code Ann. State Personnel & Pensions Ann. § 1-101 *et. seq.* ("SPP"). Those codified retirement benefits included, amongst other things, eligibility for a health insurance benefit that expressly included a prescription drug benefit plan. SPP §§ 2-502.1 and 2-508; COMAR 17.13.05(c)(1). That health insurance benefit would be the same as active employees. SPP § 2-508(c)(1); (JA 781).

In 2004, the Government Accounting Standards Board ("GASB") issued new standards that required States and municipal governments to recognize Other Post-Employment Benefits ("OPEB") liabilities on their balance sheets as they accrue. JA0118, Line 20-25; JA 119 Line 1-10; JA0041. It is the policy of the State of Maryland to follow GASB standards. *Id*.

In an effort to mimic the pension system, Maryland established the Other Post Employment Benefits Trust ("OPEB Trust") in 2004 as a tax-exempt irrevocable trust to fulfill its promise to its employees. SPP §34-101(b). The purpose of the Trust is to assist the State in financing the postretirement health insurance subsidy as specified in SPP § 2-508. SPP §34-101(c). The OPEB Trust is part of the employer contributions for post-employment health benefits to all SRPS systems. SPP § 21-

304. However, unlike the other systems under SRPS, the OPEB fund's only source of revenue is appropriations through the State budget's (or through the budget of any State Agency) and funds derived from investments of those assets.   SPP §§ 34-101(d) and (f)(2)(i).  And unlike the other systems under SRPS, appropriations to the OPEB Trust are employer contributions that are mandatory and irrevocable under the Internal Revenue Code. 28 U.S. Code § 401(a).

In direct response to the Federal Medicare Prescription Drug, Improvement and Modernization Act of 2003, 42 U.S. C. § 1395w – 101 *et. seq*., the Maryland General Assembly passed legislation to continue the inclusion of a prescription drug benefit plan.  2004 Md. Laws ch. 296 (codified at SPP § 2-509.1) which states:

> (a) Enrollment in Program -- Prescription drug benefit plan. -- The State shall continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available retirees §§ 2-508 and 2-509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription Drug Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state.

Maryland Code State Personnel and Pensions Ann. § 2-509.1(2005). In order to be eligible for the State Subsidy, the State Retiree had to satisfy the qualifications in SPP § 2-508 (c).

> (c) (1)    If a retiree receives a State disability retirement allowance or has 16 or more years of creditable service, the retiree or the retiree's surviving spouse or dependent child is entitled to the same State subsidy allowed a State employee.

> (2)     In all other cases, if a retiree has at least 5 years of creditable service, the retiree or the retiree's surviving spouse or dependent child is entitled to 1/16 of the State subsidy allowed a State employee for each year of the retiree's creditable service up to 16 years.

Md Code Ann. SPP 2-508(c)(1) and (2) (2005).

In 2011, the Legislature passed legislation to retroactively discontinue prescription drug benefits for Fitch Retirees in fiscal year 2020 ("2011 Law").[1] 2011 Md. Laws ch. 397 (codified at SPP § 2-509.1(b)).

> (b) Discontinuance of benefits in 2020. -- The State shall discontinue prescription drug benefits for Medicare-eligible retirees in fiscal year 2020.

Maryland Code State Personnel and Pensions Ann. § 2-509.1(b), 2011 Laws ch. 397. Changes were also made in SPP § 2-508. (JA0136 – JA0139). Again, the Legislature made the distinction between State retirees who had a start date before July 1, 2011, 2011, and after July 1, 2011. SPP §§ 2-508(b)(1) & (c)(1). As to retirees with a start date on or before June 30, 2011, the requirements were still the same for access to participation. But for any current employee who began service on or after July 1, 2011, and subsequently retired, the service years requirements increased to 10 (not 5 years) to be eligible and 25 years (rather than 16 years) to qualify for the maximum subsidy. JA 502.  SPP § 2-508(c)(2).

---

[1] Fiscal Year 2020 began on July 1, 2020.

7

Effective January 1, 2014, Maryland informed the Fitch Retires by letter of a new program called "Employer Group Waiver Plan" for prescription drug coverage. (JA0091). This program was for State Retirees who retired disabled or reached the age of 65 and "wraps the current State prescription drug plan benefits around the standard Medicare Part D Plan.". (JA0091). The letter assured the Fitch Retirees that neither their copays nor their out-of-pocket maximum was changing but did not inform them that the benefit was eliminated in 2011. (JA0091)

In 2018, the Maryland General Assembly enacted legislation to advance enforcement date of the 2011 Law to January 1, 2019. 2018 Md. Laws ch. 10.

In September of 2018, the Fitch Retirees, on behalf of themselves and all those retirees who had five service years before July 1, 2011, or retired with at least 16 service years before January 1, 2019, filed for declaratory and injunctive relief to stay the enforcement of the 2011 Law. (JA008, Entry 1, Exhibit 1). Maryland removed the Complaint to the US District Court for the District of Maryland. (JA8, Entry 1). After notice and hearing, injunctive relief was granted to the Fitch Retirees maintaining the status quo while litigation was pending. (JA0104; JA0212). One day before the Preliminary Injunction was granted Maryland moved to dismiss the case arguing that the State did not have the money to continue paying for the benefit and that an enforceable contract was not created by statute. (JA0009). The Fitch Retirees moved for class certification. (JA0011).

8

In May of 2019, the Legislature amended § 2-509.1 again, modifying the 2011 Law by creating three new programs to address the loss of prescription drug coverage to vested employees and retirees ("2019 Law"). 2019 Md. Laws ch. 767. The 2019 Law chose to bifurcate prescription drug coverage to vested current employees. *Id.* The first program entitled the Maryland State Retiree Prescription Drug Coverage Program ("Prescription Program") capped the out-of-pocket costs at the same level as a non-Medicare eligible retiree's out of pocket costs. SPP § 2-509.1(d)(2)(i). However, the costs of medication would have to be paid up front (before and after reaching the cap) and then the retiree would have to await reimbursement from the State. *Id.* And finally, the Maryland employee who vested in the State subsidy before July 1, 2011, would have to retire on or before December 1, 2019, to qualify for this program. *Id.*

The second program created by the 2019 Law was the State Retiree Catastrophic Prescription Drug Assistance Program ("Catastrophic Program"). SPP § 2-509.1(e); JA0493; JA0494; JA040. The Catastrophic Program was available to Medicare-eligible State Retirees who entered service on or before June 30, 2011, and retired after January 1, 2020, and would reimburse additional out of pocket costs once the retiree entered the catastrophic phase of Medicare Part D. SPP § 2-509.1(e)(1)(i) & (ii). Again, Medicare-Eligible retirees would have to pay for the

costs of their medication up front (before and after reaching the cap) and await reimbursement from the State. SPP §2-509.1(e)(2).

The third program created was called the Maryland State Retiree Life-Sustaining Prescription Drug Assistance Program. SPP § 2-509.1(f)(1). This program was available to any Medicare eligible State Retiree who participated in the Prescription Program or the Catastrophic Program. SPP § 2-509.1(f)(1)(i) &(ii). Again, Medicare-Eligible retirees would have to pay for the costs of their medication up front (before and after reaching the cap) and await reimbursement from the State at the levels established by the DBM.

Letters were sent in September of 2019 to current State employees who qualified for the benefit under the 2005 Law. (JA0040, Line 51). The establishment of the three programs were placed on hold pending the outcome of the litigation. (JA40).

In response to the 2019 Law, the District Court directed the Fitch Retirees to Amend their Complaint to address the 2019 Law and mooted their Motion for Class Certification. (JA0014, Entry 82; JA0040, Line 52) The Fitch retirees filed an Amended Complaint and a Motion to Expand the Scope of the Preliminary Injunction to include current employees who had at least 5 years of service before July 1, 2011, and did not want to retire by December 1, 2019, in order to qualify for the Maryland State Retiree Prescription Drug Coverage Program. (JA0014). The

10

Court denied the Motion to Expand Scope, however ordered that Complaint be amended to add current employees who were affected by the 2019 law. (JA0016).

The American Federation of State County and Municipal Employees, Council 3 ("Intervenor Plaintiff") filed to Intervene and also moved to expand the scope of the injunction to include current employees. (JA0014).   The Court allowed intervention of the Intervenor Plaintiff   but denied the Motion to Expand the Scope of the Injunction. (JA16).   The Fitch Retirees amended the Complaint and moved to Certify the Class to include current employees.  (JA0017).  Maryland filed a Motion to Dismiss the Complaint. (JA0017).

The Fitch Retirees amended the Complaint to enter additional counts regarding diversion of funds from the OPEB Trust. (JA0028).  Maryland filed a Motion to Dismiss the Complaint. The Court took the Motion to Dismiss under advisement.  (JA0019).

The Court denied in part and granted in part Maryland's Motion to Dismiss, finding that a contract did exist for State Retirees who retired prior to July 1, 2011, and that State retirees who retired between July 1, 2011, and December 31, 2018, have a colorable claim but current employees and employees who retired after January 1, 2019, were not entitled to relief.  (JA0405). In response, Plaintiff Michael Bridgett proceeded pro se in filing a Notice of Appeal on behalf of state employees who retired after January 1, 2019. (JA0020).   The Bridgett appeal was denied.

11

(JA22). Also, the Intervenor Plaintiff noticed an Appeal after receiving a final judgment from the District Court. (JA0021). The Fourth Circuit issued an opinion dismissing the Intervenor Plaintiff's complaint finding that a contract did not exist with the State of Maryland and its current or retired employees. (JA0023).

Maryland filed a Motion for Summary Judgment asking for dissolution of the injunction and dismissal of the case based on the decision in <u>AFSCME v. Maryland,</u> 61 F 4th 143, 151 (4th Cir. 2023. (JA0026; JA0483). The Court dissolved the injunction and after further briefing by the Parties and review by the Court, the case was dismissed. (JA0598). The Fitch Retirees filed a Notice of Appeal.

**Procedural History**

On September 10, 2018, the Fitch Retirees filed a Complaint in the Circuit Court for Baltimore City (<u>Fitch, *et.al*. v. Maryland, *et.al*.</u>, 24-18-005077). The Complaint named the State of Maryland, The Governor of Maryland, and the Secretary of the Department of Budget and Management as Defendants. (JA0008, Entry 1).

On September 11, 2018, the Defendants removed the action to the U.S. District Court for the District of Maryland. (JA0008, Entry 1, Exhibit 1 & 2).

On October 9, 2018, the Appellees filed a Motion to Dismiss. JA9, Entry 18. On September 5, 2019, that motion was denied as moot. (JA0014, Entry 82.)

12

On October 10, 2018, the District Court entered a Preliminary Injunction in favor of the Fitch Retirees, and all those similarly situated. (JA0010, Entry 31).

On May 31, 2019, the Fitch Retirees filed a Motion to Certify Class. (JA0011, Entry 36). On September 5, 2019, the Court denied the motion as moot. (JA0014, Entry 82).

On September 5, 2019, the Court entered an order finding as moot the Motion to Dismiss, the Motion to Certify Class, the Motion to Intervene, the Motion to Amend/Correct to Certify Class. (JA0014, Entry 82).

On October 16, 2019, Correspondence was filed re: Anticipated Application to Intervene by AFSCME. (JA0014, Entry 85). Order entered giving AFSCME until November 1, 2019, to file a Motion to Intervene. (JA0014, Entry 90)

On November 1, 2019, Council 3 of the American Federal State County and Municipal Employees ("Intervenor Plaintiff") moved to Intervene and Expand the Scope of the Preliminary Injunction to include current employees. (JA0014, Entry 91). The Court denied the motion as moot. (JA0016, Entry 105).

On February 8, 2020, the Fitch Retirees filed the Second Amended Complaint and a Motion for Permanent Injunction. (JA0016, Entry 106). In response, Maryland filed a Motion to Dismiss for Failure to State a Claim. (JA0016, Entry 109). The Court denied both Motions as Moot. (JA0018, Entry 122).

13

On June 30, 2020, the Fitch Retirees filed a Third Amended Complaint. (JA0018, Entry 123)

On July 7, 2020, the Fitch Retirees filed a Motion for Preliminary Injunction to Enjoin Diversion of Funds and moved for an Order to Show Cause. (JA0018, Entry 126). Summons were issued on July 13, 2020. (JA0018, Entry 128).

On July 17, 2020, the Intervenor Plaintiff filed an Amended Complaint.

On August 13, 2020, Maryland filed a Motion to Dismiss for Failure to State a Claim. (JA0019, Entry 140).

On August 25, 2020, the Court entered an Order denying the Motion for Order to Show Cause; and denying the Motion for Preliminary Injunction to Enjoin Diversion of Funds (JA0019, Entry 142).

On January 26, 2021, hearing was held on Maryland's Motion to Dismiss for Failure to State a Claim.  The Court took it under Advisement.  (JA00019 Entry 147).

On December 30, 2021, the Court issued a Memorandum Opinion and Order granting in part and denying in part Maryland's Motion to Dismiss for Failure to State A Claim.  (JA0020, Entry 148 & 149).

On January 24, 2022, Plaintiff, Michael Bridget, filed pro se, a Notice of Interlocutory Appeal.  (JA0020, Entry 150).

On February 16, 2022, the Fitch Retirees filed a Consent Motion for Voluntary Dismissal of All Claims Pertaining to the Trust Fund Found in Count IV and Specific Defendants. (JA20, Entry 158). The Court granted the Motion on February 17, 2022. (JA0020, Entry 160).

On February 16, 2022, counsel for the Fitch Retirees filed a Motion to Withdraw as Attorney for Michael Bridgett, Deborah Garlitz and Deborah Monroe. (JA0020, Entry 160).

On February 23, 2022, the Court entered an order that Court's preliminary injunction shall continue in effect. (JA0020, Entry 163).

On February 23, 2022, the Court entered Final Judgment and Order of Declaratory Judgment granting Maryland's Motion to Dismiss as to Plaintiff AFSCME. (JA0021, Entry 164).

On March 1, 2022, the Court granted Counsel Motion for Leave to Withdraw as Counsel for Michael Bridgett, Deborah Monroe and Deborah Garlitz. (JA0021, Entry 165).

On March 8, 2022, the Intervenor Plaintiff filed a Notice of Appeal. (JA0021, Entry 166).

On March 18, 2022, Maryland filed a Motion for Certificate of Appealability. (JA0021, Entry 167).

On April 6, 2022, the Fourth Circuit granted Motion for Abeyance filed by AFSCME. (JA0021, Entry 172).

On May 4, 2022, the Fourth Circuit dismissed the appeal filed by Michael Bridgett. (JA0021, Entry 175).

On June 10, 2022, the Court entered a Memorandum Opinion and Order denying the Motion to Certify Interlocutory Appeal. (JA0022, Entry 182)

On August 9, 2022, the Court issued a scheduling order. (JA0022, Entry 184).

On February 21, 2023, the USCA affirmed the decision of the District Court to dismiss Intervenor Plaintiff from the case. (JA0023, Entry 195).

On February 24, 2023, Maryland filed a Motion for Summary Judgment and dissolution of the preliminary injunction. (JA0023, Entry 196).

On February 24, 2023, the Fitch Retirees filed the Third Motion for Class Certification. (JA0023, Entry 197).

On June 29, 2023, Motion Hearing was held and it was taken under advisement by the Court. (JA0023, Entry 219).

July 19, 2023, the Court entered a Memorandum Opinion and Order dissolving the Preliminary Injunction, deferring ruling on Defendant's Motion for Summary Judgment; and Denying the Motion for Leave to File Third Motion for Class Certification. (JA0025, Entry 221).

16

On September 29, 2023, the Court entered a Memorandum Opinion and Order granting Summary Judgment and dismissing the case. (JA0025, Entry 235).

On October 24, 2023, the Fitch Retirees filed a Notice of Appeal to the US Circuit Court of Appeals for the Fourth Circuit. (JA0025, Entry 236).

## SUMMARY OF ARGUMENT

The Court erred in granting summary judgment in favor of Maryland because the Court relied on the decision in AFSCME Maryland Council 3 v. Maryland, a case that failed to acknowledge contemporaneous state law regarding statutory construction in its determination of whether §§2-508 and 2-509.1 created a contractual obligation, failed to address the unconstitutionality of the 2019 law that retroactively divested the property interests of the Fitch Retirees and entered a decision that is invalid under Fed. R. Civ. P.54 because it disposed of all claims and led to the ultimate dismissal of Fitch v. Maryland.

The Fitch Retirees would like the case remanded back to the District Court and deny Maryland's Motion for Summary Judgment so that the Fitch Retirees can present their arguments to a jury.

## ARGUMENT

The Court improperly granted summary judgment based on the opinion espoused in AFSCME Maryland Council 3 v. Maryland. The AFSCME Court relied

17

on <u>Nat 'l R.R. Passenger Corp v. Atkinson Topeka & Santa Fe Ry. Co</u>., 470 U.S. 451, 466 (1985) to determine that §§ 2-508 and 2.509.1 did not create a contract between Maryland and its employees. <u>Nat'l R.R.</u> at 151.  <u>Nat'l R.R.</u> purports, "[i]n determining whether a particular statute gives rise to a contractual obligation, "it is of first importance to examine the language of the Statute." <u>Nat'l</u> <u>R.R.</u> at 466.  To that end, "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." <u>Id</u>. at 465-466 (quoting <u>Dodge v. Bd. Of Educ. Of Chi</u>, 302 U.S. 74, 79 (1937).  The Fourth Circuit found that the Intervenor Plaintiff did not overcome this presumption. <u>Nat'l R.R.</u> at 151. However, the <u>AFSCME</u> Court did not ascertain whether the Fitch Retirees arguments overcame that presumption.   In relying on <u>Nat'l R.R.</u> without consideration of State law, the <u>AFSCME</u> Court disposed of *all* claims pending in the District Court without hearing the arguments or addressing the issues presented by the Fitch Retirees.

## A.  Maryland Law Determines Whether a Contract Exists.

The dispositive issue in this case is one of statutory contract creation, i.e. was a contract created.  It is the law of the State that determines the contract.  <u>Baker v. Baltimore County</u>, 487 F. Sup 461, 466 (Dist. Md. 1980); see also <u>Kestler v. BD of Trustees of NC Retirement Sys</u>., 48 F. 3d 800, 803 (4th Cir. 1995) ("[W]e note that

the issue of whether a contract right exists is governed by state law, while federal law governs a determination that a contract has been impaired.").  The <u>AFSCME</u> Court did not defer to the Maryland laws outlining statutory construction to determine whether the statutes in question created a contract between Maryland and the Fitch Retirees, making the decision in <u>AFSCME</u> not applicable to this case.

"In general, a statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State."  <u>Andrews v. Anne Arundel County</u>, MD, 931 F. Supp. 1255, 1260 (D. Md. 1996)(citing <u>United States Trust Co. of New York v. New Jersey,</u> 431 U.S. 1, 17 (1977) Moreover "[t]he obligations of a contract long have been regarded as including not only the express terms but also the *contemporaneous state law* pertaining to interpretation and enforcement." <u>Andrews</u> at 1260. (Emphasis added).

**B.    The Statute's Plain Language**

Maryland law begins its analysis by examining the language of a statute just like the Court in <u>AFSCME</u>, however Maryland courts extends this examination by affording its citizens additional opportunities to overcome the presumption articulated in <u>Nat'l R.R</u>.  The guidelines for examining the language of a Maryland Statute can be found in <u>Koste v. Town of Oxford,</u> 63 A. 3d 582 (Md. App 2013) which states<u>:</u>

"The primary goal of statutory construction is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision. In so doing, we look first to the *normal, plain meaning of the language of the statute*, read as a whole so that "no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of a statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends.

Koste at 589 (Citations omitted).   In review of   SPP § 2-509.1 there is statutory language that under Maryland law its plain meaning demands mandatory action. This was not addressed in the AFSCME opinion nor considered with the entry of summary judgment.  SPP § 2-509.1 reads as follows:

a) Enrollment in Program -- Prescription drug benefit plan. -- The State *shall* continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available retirees §§ 2-508 and 2-509 of this subtitle *notwithstanding* the enactment of the federal Medicare Prescription Drug Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state.

SPP §2-509.1 (Emphasis added.)

Maryland Courts have determined that the choice of the word "shall" in § 2-509.1 has rendered the provisions of a statute "unambiguously mandatory". State v. Green, 367 Md 61, 82, 785 A.2d 1275, 1287 (2001). The fact that Maryland now wishes to change how the Court reviews the word "shall" should not dissuade the Courts from determining that a contract was formed and is enough to overcome the

20

presumption in <u>Nat'l R.R</u>, if the law of the State of Maryland is taken into consideration.

Maryland law deems the term "shall" as unambiguous. "It remains a well-settled principle of this Court that "[w]hen a legislative body commands that something be done, using words such as `shall' or `must,' rather than `may' or `should,' we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed." <u>Walzer v. Osborne</u>, 911 A.2d 427 (2006). <u>See also</u> <u>United States v. Rodgers</u>, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) ("The word `may,' when used in a statute, usually implies some degree of discretion."); <u>Also</u> <u>Walzer</u> at 437. ("We have even promulgated this principle into Maryland Rule 1-201(a), which provides that [w]hen a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute").

Although the Maryland Courts provide judicial deference to the policy decisions enacted into law by the General Assembly, its use of the word "shall" denotes mandatory action in Maryland law and that action was specifically tailored to address the continuance of the State Subsidy. <u>Forest Heights v. M-NCPPC</u>, 205 A. 3d 1067 (Md. App. 2019). The Fitch Retirees assert that the language in §2-509.1 is unambiguous on the dispositive issue in this case and the Court erred in granting

summary judgment because contemporaneous State law was not considered in the

AFSCME decision.

It's only when the plain language of a statute is "subject to more than one

reasonable interpretation that, "the statutory language is ambiguous.  Lockshin v.

Semsker, 412 Md. 256, 276 (Md 2010).  This clear demarcation, i.e., ambiguous vs.

unambiguous is what helps the Courts determine the intent of the General Assembly

and highlights the error of the District Court in relying on the AFSCME decision.

### C.     The Statutory Scheme

However, Maryland law did not stop there, it instructs the Court not to confine

its interpretation of the statute's plain language to the isolated section alone.

> "We, however, do not read statutory language in a vacuum, nor do
> we confine strictly our interpretation of a statute's plain language to the
> isolated section alone. Rather, the plain language must be viewed within
> the context of the statutory scheme to which it belongs, considering the
> purpose, aim, or policy of the Legislature in enacting the statute. We
> presume that the Legislature intends its enactments to operate together as
> a consistent and harmonious body of law, and, thus, we seek to reconcile
> and harmonize the parts of a statute, to the extent possible consistent with
> the statute's object and scope."

Koste, 63 A.3d at 589-590.  This statutory scheme regarding health coverage that

included prescription drug coverage is how §2-508 and §2-509.1 (prior to the 2011

and 2019 Laws) create a unilateral statutory contract.

The creation of § 2-509.1 was the culmination of a Legislative intent that extended past mere policy. Under <u>City of Frederick v. Quinn</u>, the types and level of benefits owed to a vested employee are dictated by the terms and status of the policy in place at the time employees complete the requisite qualifications and vest in the benefit. <u>City of Frederick v. Quinn</u>, 35 Md. App. 626, 371 A.2d 727 (1977). The Fitch Retirees assert an analogous argument regarding retiree eligibility for prescription drug benefits when arguing that SPP § 2-501 *et. seq* outlines the terms of a contract between them and the State of Maryland. This benefit was not a gratuity and the health plan that included prescription drug coverage is the product of mutual promises between the State and its employees that was earned by their years of service. It is a contract.

The <u>AFSCME</u> Court decision only reviewed §§ 2-508 and 2-509.1 exclusively for language that could create a bilateral contract and not for the statutory scheme that gave rise to the creation of the statute which is a tool used in Maryland law to aid in determining the intent of the legislation. This tool was disregarded when the District Court granted summary judgment based on the AFSCME opinion that failed to take state law into account during its deliberations.

**D.    The Prepaid Fringe Benefit.**

"A material fact is a fact the resolution will somehow affect the outcome of the case." <u>King v. Bankerd</u>, 492 A.2d 608 (1985). The Court erred by not

23

considering that the Retiree Health Insurance ("Fringe Benefit") accrued during employment was to be distributed during retirement.   Under Maryland law, "wage includes a bonus, commission, fringe benefit or any other remuneration promised for service." Maryland Rule 3-501(c).  The salary of the Fitch Retires during active employment had to be adjusted by the value of the Fringe benefit offered by the State to recruit and maintain a workforce. Essentially Fitch Retirees prepaid for their Retirement Health Insurance and under the 2019 Law will only be able to avail themselves of its benefit if they expend additional funds.   This draconian modification of their benefit is not what they were expecting when they applied and agreed to employment.  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant".  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The fact that the Fitch Retirees prepaid for this benefit during their working years only to have it stripped from them because of age or disability during retirement would lead a reasonable jury to believe that an injustice has occurred. The Fitch Retirees contend that they have already paid for this benefit and vested in the subsidy.  Maryland has argued that the Fitch retirees did not vest into the benefit nor did they pre pay for its use.  (JA 424, ¶ 2). This is a material fact that precludes entry of summary judgment in favor of Maryland by its very nature.

24

### E.    A Separate Vesting Criteria for Fitch Retirees.

Also, crucial to the review of whether summary judgment was properly granted in this case is the concept of vesting.    Black's Law Dictionary defines "vested" as, "[h]aving become a completed, consummated right for present or future employment, not contingent; unconditional; absolute." Black's Law Dictionary (3rd Pkt. Ed. 2006).  The requirements of § SPP 2-508 is consistent with that definition. If the Fitch retirees worked a minimum of 5 years of credible service, or retired with a minimum of 16 services years they would receive a State subsidy for prescription drug coverage during their retirement.  The Fitch retirees fulfilled that requirement and upon their retirement their right to the State subsidy became vested.  The intent of the legislature is not implied, it is actual. The legislature did not require a State employee to vest to receive dental or survival benefits during their retirement, but took this unprecedented action for qualification of prescription drug coverage. The Legislature did not set up specific requirements to qualify for access to the dental plan or for survival benefits, but they did so for prescription drug coverage.  The Legislature did not create a Trust Fund that mimics a Pension Fund for any other benefit other than the State subsidy that provided prescription drug coverage.  These omissions are relevant in determining the legislative intent of the General Assembly.

A unilateral contract was created to ensure continued access to the State Subsidy. Unilateral contracts are "accepted not by traditional acceptance, but by

performance." (JA 394). The Fitch retirees continued employment with the State in reliance of this promise set forth in §2-509.1(a). In fact, one Fitch Retiree paid to access the State subsidy during retirement a few months before notification of the State subsidy's elimination.   (JA 63).    "…[W]here employees have proper knowledge of it, a policy directive thus can function as an offer of a unilateral contract which the employee accepts by continuing to work…in reliance of it." Allstate Insurance Company v. Warns, CCB 11-1846 (2012). The failure to address this separate vesting criteria argument of the Fitch retirees § 2-508 to focus exclusively on the lack of terms "such as contract, covenant, or bind "again raises the applicability of the opinion to the Fitch Retirees. AFSCME, 61 at 150.

### F.  The 2019 Law is Unconstitutional

By extension, the retroactive provisions of 2-509.1 abrogate vested property interests of State Retirees and are violative of Article 24 of the Maryland Constitution and Article I § 10 of the United States Constitution. Under Quinn Maryland cannot make this retroactive change once the employees have vested. Quinn at 632. The 2019 Law is unconstitutional and otherwise invalid in that it reduces retroactively the health benefits of the Fitch Retirees and all those similarly situated.   The Fitch retirees made decisions to ensure the financial stability of their retirement and the elimination and then modifications of the subsidy have placed their financial future at risk.  (JA 63).  "Legislatures may impose retroactive liability

to some degree, but a statute may be unconstitutional if it imposes "severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience." Allstate v. Kim, 829 A.2d 611 (Md Court of Appeals 2003).

### G.  No Representation.

All these arguments differ from the issues presented by the Intervenor Plaintiff in AFSCME. The Intervenor Plaintiffs requested their appeal be reviewed pursuant to Fed. R. Civ. P. 54(b). (JA 23, Entry 166).  "An appellate court reviewing a 54(b) order is confined to the issues and claims established in the order and cannot address those other claims and issues that remain before the District Court." Fogade v. ENB Revocable Trust, 263 F. 3d 1274, 1297 (11th Cir. 2001).  The AFSCME Court was limited by the issues presented by the Intervenor Plaintiff.  United States v. Eimco Process Equip. Co. 61 F.3d 445, 448 (5th Circ 1995). "[A] court of appeals "must not... set aside" a trial court's "findings of fact, whether based on oral or other evidence... unless clearly erroneous... [and] must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). The appellate court cannot reverse the district court's findings at all if the findings are "plausible in light of the record viewed in its entirety," even if the appellate court would have found differently itself.  Husain v. Olympic Airways, 316 F.3d 829, 835 (9th Cir. 2002). Here the Fourth Circuit did not issue an Order stating that the District

27

Court's findings of fact were "clearly erroneous". The AFSCME Court stated that they "…disagreed with the District Court's reasoning" but never stated that the reasoning was "clearly erroneous". <u>AFSCME</u> at 151. Hence the <u>AFSCME</u> Court order should not be the basis to grant summary judgment to Maryland.

## CONCLUSION

Based on the foregoing reasons, the Fitch Retirees contend that summary judgment should not have been granted to Maryland. The District Court erred when it relied on the AFSCME case whose decision was not applicable to the Fitch Retirees because it did not give deference to State law, allowed a retroactive invalid law to divest the property interests of the Plaintiffs and ignored Fed. R. Civ. P. 54 by disposing of all claims. The Fitch Retirees request the case be remanded back to the District Court and Deny the Appellee's Motion for Summary Judgment so that these issues be presented to a jury.

January 4, 2024

/s/_____
Deborah A. Holloway Hill
P.O. Box 465
Cockeysville, MD 21030
O: (410) 428-7278
dahhlaw@outlook.com

## STATEMENT REGARDING ORAL ARGUMENT

The Fitch Retirees requests oral argument in this case due to the complexities of both the legal and factual issues involved which could significantly aid the decisional process in this case.

/s/_____
Deborah A. Holloway Hill
P.O. Box 465
Cockeysville, MD 21030
O: (410) 428-7278
dahhlaw@outlook.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)7(B) because the brief contains 6666 words excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of 32(a)(5) and the type style requirements of Rule 32(a)(6) ecause this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font.

/s/_____
Deborah A. Holloway Hill

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/USDC-ECF system.  All participants are registered CM/USDC-ECF users and will the served by the CM/USDC-ECF system.

/s_____/_____
Deborah Holloway Hill